UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.

GLOBAL INTERNATIONAL
TRADING & BROKERS, INC., Charterers,

    Plaintiffs,

-vs-

M/V AMBER EXPRESS, her engines,
Equipment, tackle, etc., in rem,

    Defendant.
_____/

## VERIFIED COMPLAINT FOR CHARTERER'S LOSSES AND EXPENSES

COME NOW the Plaintiffs, GLOBAL INTERNATIONAL TRADING & BROKERS, INC., by and through their undersigned counsel, and hereby filed this VERIFIED COMNPLAINT, In Admiralty, against the M/V AMBER EXPRESS, her engines, tackles, boilers, appurtenances, etc., in rem, and in support of their claim for losses and expenses state that:

1. This is a claim of Admiralty and Maritime Jurisdiction as hereinafter more fully appears, and is an Admiralty and Maritime claim within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure.

2. The Defendant, M/V AMBER EXPRESS, her engines, tackles, boilers, appurtenances, etc., is believed to be a seagoing vessel of Panama Registry and was and is engaged in the trade of international cargo transportation which is within this District and the jurisdiction of this Court. Specifically, the Plaintiffs are informed

that the subject vessel is currently berthed at: 3164 N.W. South River Drive, Miami, Florida 33142. The M/V AMBER EXPRESS is now within the admiralty and maritime jurisdiction of this Honorable Court.

3. The Plaintiffs, GLOBAL INTERNATIONAL TRADING & BROKERS, INC., entered into a Bareboat Charter with option to purchase agreement with the owners of M/V AMBER EXPRESS—AMBER EXPRESS CARGO, INC.—on or about December 6, 2013, giving the Plaintiffs possession of M/V AMBER EXPRESS. A copy of the executed Bareboat Charter with option to purchase agreement is attached as an appendix to this Complaint.

4. The Plaintiffs planned to use their Charter to ship goods to and from Haiti on the M/V AMBER EXPRESS.

5. Provision 3 of the Bareboat Charter agreement guaranteed that "[t]he Vessel shall be properly documented on delivery in accordance with the laws of the flag State indicated in Box 5 (Panama) and the requirements of the classification society stated in Box 10 (Qualitas Register of Shipping).

6. Unfortunately, the M/V AMBER EXPRESS was not properly documented upon delivery to the Plaintiffs and, in fact, subject to at least two legal claims for unpaid bills and seizure by the U.S. Government. *See United States v. Amber Express Cargo, Inc.*, 13-20445-CR-GRAHAM.

7. The Plaintiffs, in a desperate attempt to ready the M/V AMBER EXPRESS for a trip to Haiti in time for Christmas, 2013, paid port expenses in the amount of $21,000, crew salaries in the amount of $15,700, Egyptian certificate expenses in the amount

of $6,225, Panamanian certificate expenses in the amount of $5,000, provision expenses in the amount of $1500, and visa expenses in the amount of $3,000.

8. Despite the Plaintiffs paying all of these expenses, the owners still did not resolve the pending legal cases until December 30. Even then, the Plaintiffs were not able to clear up problems with the flag documentation with the Panamanian government and receive temporary certificates allowing them to take the M/V AMBER EXPRESS on a voyage to Haiti until January 8, 2014. Some cargo had spoiled by the time the M/V AMBER EXPRESS had arrived in Haiti, causing further loss in the amount of $17,000.

9. Because of more problems with the M/V AMBER EXPRESS's paperwork, the Plaintiffs had to berth in Bimini, Bahamas, and were not allowed to return to the United States until March 8, 2014. The Plaintiffs incurred another expense in the amount of $4,870 when they paid for a United Arab Emirate certificate that was owed by the M/V AMBER EXPRESS.

10. Upon return to the United States, the Plaintiffs had to deal with continuing problems with the registration to the M/V AMBER EXPRESS and were not able to leave the United States on a second voyage to Haiti until May 4, 2014. Once again—due to the delay—the Plaintiffs suffered spoilage losses to the cargo, this time in the amount of $11,500.

11. Due to the delays caused by the pre-existing problems with the registration and certification of the M/V AMBER EXPRESS during this period, causing it to be idled, the Plaintiffs suffered the following financial loss:

- Terminal fees--$94,500

- Dock fees--$5,500
- Crew payroll and expenses--$14,938
- Security--$32,400
- Fuel--$4,000
- Safety Inspections--$9,000

12. The Plaintiffs also lost total estimated profit in the amount of $734,850, due the delay and unnecessarily idled M/V AMBER EXPRESS during this period caused by the certificate and registration problems.

13. Before the July 2, 2014, return to the United States, the Plaintiffs discovered that due to further holdups in certification, the M/V AMBER EXPRESS was barred from sailing in U.S. waters. The Plaintiffs were delayed and the M/V AMBER EXPRESS idled another 30 days because of these certificate problems. This caused the following direct losses:

- Port fees and security—$23,000 (Miami) & $8,000 (Haiti)
- Crew payroll, expenses and provisions--$20,000
- Fuel--$4,000

14. After inspections and further paperwork delays, July 26, 2014, the Plaintiffs took the M/V AMBER EXPRESS on their third voyage to Haiti on July 26, 2014.

15. The Plaintiffs were delayed in Haiti due to an inspection by the surveyor for Qualitas who was employed by the owners of the M/V AMBER EXPRESS. The inspections occurred every three months at the expiration of the temporary safety management certificates, and, on this occasion, the Plaintiffs had to fly over the safety inspector to

Haiti in order to make sure that they had a valid safety certificate before returning to the United States.

16. Due to all the previous problems and delays, the Plaintiffs lost many customers and were not able to fill up the M/V AMBER EXPRESS for another voyage until late October. The Plaintiffs took the M/V AMBER EXPRESS on a fourth voyage to Haiti on October 28, 2014, and returned to the United States on December 5, 2014. When the M/V AMBER EXPRESS returned to the United States, the owners attempted to seize the vessel, but the owners told their agent that they would allow the Plaintiffs to take one more trip and then try to negotiate with the Plaintiffs in order to reconcile all of the Plaintiff's losses.

17. In late January and early February, 2015, the Plaintiffs fully loaded the M/V AMBER EXPRESS for another voyage to Haiti and were ready to leave on February 2, 2015. Before the Plaintiffs were able to leave for Haiti, they were informed by the local agent for AMBER EXPRESS CARGO, INC., that, pursuant to the instructions of the owners, that the M/V AMBER EXPRESS was not to be allowed to leave Miami. Because of this delay, the Plaintiffs have suffered the following losses:

- Fuel--$9,900
- New Radar--$4,000
- Crew payroll and expenses--$2,300
- Provisions--$1,000
- Port fee--$5,600
- Agent Fee--$4,000

5

18. The Plaintiffs have suffered monetary losses due to the breach of the Bareboat Charter agreement that it entered into with AMBER EXPRESS CARGO, INC.

19. Due to the breach of the charter agreement by AMBER EXPRESS CARGO, INC., the Plaintiffs have a maritime lien against the M/V AMBER EXPRESS. *See e.g., Bank One Louisiana, N.A. v. Mr. Dean MV, Etc.,* 293 F.3d 830 (5th Cir. 2002).

20. The Plaintiffs are entitled to be reimbursed for all of their expenses and losses caused by the breach of the Charter agreement in the amount of $327,933

WHEREFORE, the Plaintiffs pray:

A. That process in due form of law according to the rules and practice of this Court in causes in Maritime and Admiralty Jurisdiction may issue against Defendant, the M/V AMBER EXPRESS, her engines, tackles, boilers, etc., in rem.

B. That Warrant of Arrest issue against the M/V AMBER EXPRESS, her engines, tackles, boilers, appurtenances, etc., in rem, and that this Court order and adjudge that the M/V AMBER EXPRESS be condemned and sold to pay the amount due the Plaintiffs together with prejudgment interest, costs and for such further relief that justice may require and that the court may deem just and proper and further.

C. That judgment be entered against the Defendants, in favor of the Plaintiffs, in the amount of $327,933 together with prejudgment interest, costs, reasonable attorney's fees as allowed by General Maritime Law and such other relief as this Court may deem just and proper.

February 10, 2015
Coral Gables, Florida

By: *Clayton R. Kaeiser*
Clayton R. Kaeiser
Florida Bar 348120

6

clayton@clayrkpa.com
Clayton R. Kaeiser, P.A.
330 Alhambra Circle
Suite 200
Coral Gables, Florida 33134
Telephone: (305) 548-4888
Facsimile: (305) 250-4495
*Attorney for Plaintiffs*

## VERIFICATION OF COMPLAINT

STATE OF FLORIDA            )
                            ) SS:
COUNTY OF MIAMI-DADE        )

BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified within and for the state and county aforesaid, personally came and appeared the undersigned, FRESLET LaFRANCE, as President of GLOBAL INTERNATIONAL TRADING & BROKERS, INC., who, after being duly sworn on oath deposes and says:

I have review the foregoing Verified Complaint and state that the contents thereof pertaining to my claim are true to the best of my knowledge.

FURTHER AFFIAN SAYETH NAUGHT.

BY: _____
FRESLET LaFRANCE

BE IT KNOWN, that on this 10th day of February, 2015, before the undersigned, a notary public, duly commissioned and sworn, personally came and appeared FRESLET LaFRANCE who is personally known to me/who produced the following-- DRIVERS LICENSE --as photographic identification and who executed the foregoing verification.

IN TESTIMONY WHEREOF, I have hereunto subscribed my and name and affixed my seal of office the day and year last written above.

_____
NOTARY PUBLIC
Commission Date & Seal



FRANCIS MONTES DE OCA
MY COMMISSION #FF141717
EXPIRES July 14, 2018
(407) 398-0153    FloridaNotaryService.com

